STATE EX REL. MILWAUKEE COUNTY REPUBLICAN COMMITTEE and another, Petitioners, vs. AMES, Mayor, Respondent.

*February 15—May 17, 1938.*

644

646

For the petitioners there were briefs by *Lyman G. Wheeler,* attorney, and *Lilian M. Kohlmetz, Roland J. Steinle, Harry G. Slater, Lewis D. Thill,* and *Joseph*

*G. Konop* of counsel, all of Milwaukee, and oral argument by *Mr. Wheeler* and *Mr. Slater.*

For the respondent there were briefs by *Edward G. Minor,* city attorney of Cudahy, and *Ward Dunphy,* assistant city attorney, and oral argument by *Mr. Minor.*

Briefs *amici curiæ* were filed by the *Attorney General, L. S. Vaudreuil,* deputy attorney general, and *Warren H. Resh* and *Harold H. Persons,* assistant attorneys general; by *Walter J. Mattison,* city attorney of Milwaukee, *Chas. W. Babcock,* first assistant city attorney, and *Cornelius J. Merten,* assistant city attorney; and by *John L. Waddleton* of Milwaukee.

The following opinion was filed March 2, 1938:

MARTIN, J.  The material parts of the several statutes applicable provide as follows:

"Sec. 6.32  *Election inspectors and clerks.*  (1) Except as otherwise provided, there shall be three inspectors, two clerks of election and two ballot clerks at each poll at every election held under the provisions of this title, each of whom shall be a qualified elector in the election district, except for election boards serving more than one precinct pursuant to section 6.045, and said electors shall be able to read and write the English language understandingly and not a candidate to be voted for at such election.  Provided, however, that at polls where voting machines are used ballot clerks shall not be employed.  Not more than two of such inspectors, nor one of said clerks of election, nor one of said ballot clerks, shall be members of the same political party, but each one of said officers shall be a member of one of the two political parties which cast the largest vote in the district at the last preceding general election, the party which cast the largest vote being entitled to two inspectors, one clerk and one ballot clerk, and the party receiving the next largest vote being entitled to the remainder of said officers.  *The basis for such division shall be the vote of each party for its presi-*

*dential elector receiving the largest vote, or for its candidate for governor, at the last preceding general election."*

Sub. (4) of sec. 6.32, Stats., provides:

"(a) The mayor of every city, except cities having one hundred thousand or more inhabitants, shall nominate to the common council thereof, and the president of every village shall nominate to the village board of trustees thereof, at the first regular meeting of such council and of such board in February of each year in which a general election is to be held, and if no such meeting is held, then at a special meeting, which he shall call for such purpose on the last Tuesday of said month, three persons for inspectors of election, two for clerks of election, and two for ballot clerks, in each election district therein.

"(b) Such inspectors, clerks and ballot clerks shall be chosen from a list submitted to the mayor of the city, or to the president of the village, for that purpose by the regular county committee or city committee of the aforesaid two parties. Such list shall be submitted by the chairman from each ward to the city or county committee, and only such persons so selected by the chairman from each ward shall act as such inspectors, which list shall bear the signature of the chairman and secretary of said county or city committee.

"(c) Such common council or board of trustees shall immediately approve or disapprove such nominations. If they disapprove as to any such nominee, the mayor or president shall immediately nominate another person, qualified as aforesaid, from the list of the two committees representing the two parties which cast the largest vote in said district in the last general election, and the mayor or village president shall continue to do so until the requisite number shall have been nominated and confirmed at such meeting.

"(d) The persons so appointed inspectors, clerks and ballot clerks shall hold their offices for two years and until their successors are appointed and qualified, and shall act as such officers at every primary, general, municipal and special election following their appointment held within their respective districts during such term. . . ."

Sub. (6) of sec. 10.04, Stats., relates to cities having more than one hundred thousand inhabitants. Hence, it applies only to the city of Milwaukee. Said subsection provides:

"In each precinct not more than one of said inspectors, nor more than one of said ballot clerks, so nominated, shall be of the same political party, and such inspectors shall be chosen from the three dominant political parties as shown by the returns of the last preceding general election in such precincts, and such ballot clerks shall be chosen from the two dominant parties as shown by the returns of the last preceding general election in such precincts; the party affiliation, in contested cases, to be finally determined by the chairman of the city committee of the political party entitled to the appointment."

The petitioner, Eleanor Hamlin, was duly certified by the Milwaukee County Republican Committee to the mayor of the city of Cudahy for appointment as a clerk of election in the precinct of the First ward of said city, pursuant to par. (b) of sub. (4) of sec. 6.32, Stats. The mayor has refused to submit the name of said petitioner to the city council for said office, and has declared that he will follow the ruling made by the attorney general, under which ruling names for appointment to the election board would only be taken from lists certified and submitted by the Democratic and Progressive parties. In the brief of the attorney general, as *amicus curiæ,* filed with the court, it is argued that sec. 6.32 (1) is ambiguous and permits of several possible constructions. It is contended that said section may mean:

(1) That presidential vote is to be used when the last preceding election was in a presidential year and that otherwise vote for governor is to be used.

(2) It may mean that a dominant political party without a national organization is to have its strength measured by its vote for governor, and that parties nationally organized

are to have their strength computed by their vote for president.

(3) It may mean that a party with both a state and national organization may have its choice as to how its strength is to be computed.

(4) It may mean that the vote for presidential electors should now be completely disregarded since it is no longer possible under the short ballot to select the one "receiving the largest vote."

(5) It may mean that the vote for governor alone should be considered because of the fact that one of the dominant parties has no presidential vote.

Finally, both respondent and the attorney general contend that the party vote for governor is the correct and only proper criterion measuring party strength. The election machinery, as provided in sec. 6.32, Stats., and the several subdivisions thereto, must be examined as a whole. No part should be eliminated if the legislative purpose and intent can be ascertained and carried out. The apparent troublesome part of the statute is the basis upon which division is made between the two political parties which cast the largest vote in the particular district *at the last preceding general election.* The statute provides:

"The basis for such division shall be the vote of each party for its presidential elector receiving the largest vote, or for its candidate for governor, at the last preceding general election."

Sec. 6.32 (1) was amended in 1915, by sec. 37, ch. 383, by adding the words "or for its candidate for governor." Prior to the amendment in 1915, and since the enactment of ch. 2, Laws of Sp. Sess. 1905, the division between the two parties was on the basis of the party vote for the presidential elector receiving the largest vote at the last preceding presidential election. Since 1915, public officials and party

officials alike have construed the law to mean that, when the last general election was one in which a president and vice-president were elected, the basis of appointment of the precinct officials was the party vote cast for presidential electors, and when the last general election was for state, legislative, and county officials, the vote for governor was taken for the basis of the appointment of precinct officials.

During the 1937 session of the legislature two attempts were made to amend sec. 6.32. First, by Assembly Bill No. 351. This bill, if passed, would have amended the statute by striking out the words "presidential elector receiving the largest vote, or for its," which would have made the statute as amended read, "The basis for such division shall be the vote of each party for its candidate for governor, at the last preceding general election." This bill was defeated by a vote, "Ayes" 46; "Noes" 41 (Assembly Journal, 1937, page 824). Thereafter, Assembly Bill No. 576 was introduced. It proposed to amend sec. 6.32 by striking out the following words, "for its presidential elector receiving the largest vote, or for its candidate for governor, at the last preceding general election." Had this amendment been adopted the statute would read, "The basis for such division shall be the largest vote of each party at the last preceding general election, whether for president or for governor." This bill passed the assembly by the vote of, "Ayes" 43; "Noes" 41. It was sent to the senate on June 3, 1937, and on July 1, 1937, the senate returned the bill to the assembly, with action incomplete, due to *sine die* adjournment. (See Assembly Journal, 1937, page 1376; Senate Journal, page 1615.) We think it apparent that the legislature interpreted said section to mean that the dominant party should be determined, in presidential years, by the vote cast for presidential electors, and in other general elections, by the vote cast for governor. There is no basis from which the court might conclude that the legislature intended to use two different standards dur-

ing the same period for measuring party strength, or that it was left optional with the political parties to choose the standard—that was fixed by the legislature in 1905 and has ever since been followed. The legislative intent of the 1915 amendment should not be influenced by the organization of the Progressive party in 1934. (See *State ex rel. Ekern v. Dammann,* 215 Wis. 394, 254 N. W. 759.) It is the duty of the court to construe the law, but we have no power to legislate. In order to adopt the respondent's construction of the statute we would have to entirely eliminate that portion of the statute which provides:

"The basis for such division shall be the vote of each party for its presidential elector receiving the largest vote. . . ."

The respondent's contention that the party vote for governor is the correct and only proper criterion measuring party strength is contrary to the simple, plain language of the statute.

Party affiliation, particularly in Wisconsin, is not static. It is measured every second year. The inspectors, clerks of election, and ballot clerks are appointed during the month of February of each year in which a general election is to be held. They hold office for a term of two years and until their successors are appointed and qualified. Thus the election machinery, as determined by the party strength in the preceding general election, is set up every two years in the manner as provided by sec. 6.32, Stats., and the several subdivisions thereof. We think that the legislative intent is clear that the two dominant parties in a presidential year be determined by the vote cast for the presidential electors receiving the largest vote, and that in the following general election the two dominant parties be determined by the vote cast for their candidate for governor. This is the construction which has been placed upon the statute for the past thirty-three years.

Sec. 6.81, Stats., makes it the duty of the secretary of state to issue an election manual. It provides:

"There shall be prepared and published by the secretary of state separate from the election laws an election manual explanatory of the duties of election officials and the qualifications and privileges of electors, together with such notes and references to the statutes as he shall deem advisable to be furnished free to election officials and others in such manner as he shall judge most likely to promote the public welfare."

In 1931, the secretary of state issued a pamphlet, prepared by the division of records and elections, department of state. Sec. 121 (a), ch. XII, of the election pamphlet, in part relates to the qualifications of the inspectors, clerks of election, and ballot clerks. Said section further provides:

"Two of the inspectors, one clerk of election, and one ballot clerk are to belong to the political party which cast the largest vote in the district for presidential elector, or for governor, at the last general election, and one each of the inspectors, clerks, and ballot clerks is to belong to the political party casting next to the largest vote at such election in such precinct. *If a United States president were voted for at the said election the highest vote cast for presidential electors will be the basis of such calculations, but otherwise the vote for governor will rule.*" Quoting sec. 6.32, Stats.

The point is made by respondent that, since we use the short-ballot system, the names of the presidential electors do not appear thereon; hence, there is no opportunity of selecting from the presidential electors the one receiving the largest vote. We believe there is no merit in this contention since under the short-ballot system all presidential electors receive the same vote; that is, the total vote cast in the state for the party's presidential candidate.

Prior to 1915, the presidential vote was the only basis provided by statute. The election officials were appointed every two years on the basis of the party vote in the preceding presidential election. It is apparent that the legislature

intended to have the basis of party strength measured in periods to conform with the terms for which election officials were appointed. The 1915 amendment accomplished this purpose. Had the legislature intended otherwise, it would have eliminated the presidential vote entirely as a basis for the appointment of precinct officials.

We construe the statute to mean that, in the appointment of election officials, such as inspectors, clerks of election, and ballot clerks, when the preceding general election was a presidential election, the basis for division of the election officials shall be the vote of each party for its presidential electors, and that, in making such appointments following a general election in a nonpresidential year, the division shall be made upon the vote of the party candidate for governor. We apply this same interpretation to sub. (6) of sec. 10.04, Stats., except that under said subsection each of the three dominant political parties shall be entitled to one inspector each, and the clerks shall be chosen from the two dominant political parties. This is the construction which has been placed upon the statutes in question through all the years. Such practical construction is entitled to great weight. *State v. Johnson,* 186 Wis. 59, 69, 202 N. W. 319; *State ex rel. Board of Regents v. Zimmerman,* 183 Wis. 132, 197 N. W. 823; *Marinette, T. & W. R. Co. v. Railroad Comm.* 195 Wis. 462, 465, 218 N. W. 724; *Mauel v. Wisconsin Automobile Ins. Co.* 211 Wis. 230, 236, 248 N. W. 121.

The name of the petitioner, Eleanor Hamlin, having been duly certified to the respondent as mayor of the city of Cudahy by the proper officials of the Milwaukee County Republican Committee for the office of clerk of election in and for the precinct of the First ward of said city, it became the absolute duty of the respondent, under pars. (a) and (b) of sub. (4) of sec. 6.32 to submit her name as nominee to the city council for the office of clerk of election. His duty in this regard is clear. He had no choice in the matter.

*By the Court.*—Let the writ issue as prayed for.

ROSENBERRY, C. J. (*dissenting*). Briefly stated my reasons for dissenting are as follows:

The statute provides that the basis of the division of election officials between political parties

"shall be the vote of each party for its presidential elector receiving the largest vote, or for its candidate for governor, at the last preceding general election."

In presidential years votes are cast for presidential electors and also for governor. In other years votes are cast for governor alone at the general election. The statute requires the appointing officer (mayor, president, or chairman) to determine upon the basis of the election returns which of the several political parties are entitled to have representatives appointed. It is conceivable at least that in some election districts the vote for presidential electors might form a proper basis for the appointing officers' decision while in other election districts the vote for governor might more accurately disclose the proper basis for selection. The provision is in the alternative. The statute does not say that in any particular year the vote for presidential electors shall be considered and that in some other year the vote for governor shall be considered. It is the duty of the appointing officer to apply that test which will accomplish the statutory purpose; that is, to have the election officials chosen from the two dominant political parties in the district where the appointment is made. The determination made by the appointing officer therefore cannot be controlled by the courts unless it appears that his appointments are not made from the members of the two political parties which cast the largest vote. In the particular election district under consideration it appears that the two political parties which cast the largest vote were the Democratic party and the Progressive party. In my opinion therefore the mayor of the city of Cudahy was guilty of no abuse of

discretion in making appointments which carry out the evident purpose of the legislature, which is to have the election officials chosen from the two political parties casting the largest vote in the 1936 election whether for presidential electors or for governor.

The statute being in the alternative *mandamus* does not lie to control the action of the mayor unless his action amounts to an abuse of discretion. *State ex rel. Koch v. Melms* (1915), 160 Wis. 274, 151 N. W. 783; *State ex rel. Davern v. Rose* (1909), 140 Wis. 360, 122 N. W. 751; *State ex rel. Conners v. Zimmerman* (1930), 202 Wis. 69, 231 N. W. 590; see also *State ex rel. Cook v. Houser* (1904), 122 Wis. 534, 100 N. W. 964.

FRITZ, J. (*dissenting*). The ultimate result of the construction given by the majority of the court to the provisions in sub. (1) of sec. 6.32, Stats., is to qualify the Republican party as the party receiving the next largest vote in the district in question to that of the Democratic party, which cast 805 votes for its presidential electors, although the Republican party's presidential electors and candidate for governor received, respectively, but 85 and 88 votes, as compared to 503 votes cast for the Progressive party's candidate for governor. That result is obviously so absurd that there is applicable the rule that—

"A statute should not be construed so as to work an absurd result, and when it may be so construed ambiguity results, and justifies the invoking of principles of statutory construction to avert such a result." *Carchidi v. State,* 187 Wis. 438, 443, 204 N. W. 473, 475.

To that end due regard should be given to the established principles that—

"A dominant rule in the construction of statutes is to discover and give effect to the legislative purpose." (*Wiscon-*

*sin Truck Owners Asso. v. Public Service Comm.* 207 Wis. 664, 678, 242 N. W. 668) ; that—

"The statute is to be examined first to discover the legislative purpose, and when that purpose is discovered it is to be so construed as to effect the evident purpose of the legislature if the language admits of that construction." (*Beckman v. Bemis-Hooper-Hays Co.* 212 Wis. 565, 571, 250 N. W. 420; *State ex rel. Mattek v. Nimtz,* 204 Wis. 311, 314, 236 N. W. 125) ; and that—

"A statute should be construed to give effect to its 'leading idea and the whole brought into harmony therewith if reasonably practicable.' " (*McCarthy v. Steinkellner,* 223 Wis. 605, 615, 270 N. W. 551, 271 N. W. 374.)

In view of those principles I cannot concur in the construction adopted by a majority of the court.

The evident purpose of the provisions in sec. 6.32 (1), Stats., that—

"each one of said officers [election clerks and inspectors] shall be a member of *one of the two political parties which cast the largest vote* in the district at the last preceding general election,"
"the *party which cast the largest vote* being entitled to two inspectors, one clerk and one ballot clerk,"
"and the *party receiving the next largest vote* being entitled to the remainder of said officers,"

is to insure, for obvious reasons, that the election officials be recruited from the two political parties which were the dominant parties in a district because they cast the largest vote at the last general election. There is certainly no intimation whatever that a party must have a presidential candidate in order to be eligible to qualify as "one of the two political parties which cast the largest vote" at a general election in which there was a presidential vote. On the contrary, the plain and unqualified meaning and intention evidenced by those provisions is that parties having a candidate for governor may test their party strength with other parties; and

the majority opinion recognizes that this occurs on alternate biennial general elections.

Bearing in mind that under those provisions the principal and controlling facts to be ascertained,—in order to determine which are the two parties whose members are eligible. for appointment as election officials, and which of those two is entitled to two inspectors,—are (1) which are the two parties that "cast the largest vote . . . at the last preceding general election," and (2) which one of those two "cast the largest vote," and which received "the next largest vote," we turn to the next sentence in the statute which directs that—

"The *basis for such division shall be* the *vote of each party for its presidential elector receiving* the *largest vote, or for its candidate for governor,* at the last preceding general election."

In the majority opinion the first clause in that sentence relating to "the vote of each party for its presidential elector" is apparently considered the sole and controlling expression as to the legislative intent and purpose in respect to the application of the statute to the party vote in the years of a presidential election; and therefore the alternative provision, "or for its candidate for governor, at the last preceding general election," which is in the concluding clause in that sentence, is regarded in that opinion as inapplicable to the vote cast at such an election for a party's candidate for governor, even though that vote was the largest, or the second largest vote cast for any such candidate or any presidential elector. In my opinion there is nothing in the statute because of which the application of the alternative clause last quoted is limited to solely elections in years in which there is no presidential election, or because of which that alternative clause is not applicable at all general elections. The sentence construction is in the form of an ordinary alternative, and it is plain that the statute contemplates that whichever one of the

largest votes of any party,—whether for its presidential electors or for its candidate for governor,—is applicable in the situation is to be selected as the measure of that party's strength in a particular year. If there is no presidential candidate, then, obviously, the parties will measure their strength against each other by their votes for their candidate for governor. During a presidential year a party having a presidential candidate may have counted its vote for presidential electors or its vote for governor, whichever is higher, and a party having no presidential candidate is entitled to have its vote for governor used as the basis for judging its political strength at that particular election. There is no occasion for discarding either of the statutory tests, nor any reason for ascribing to them any more than the subordinate function of demonstrating in the alternative the relative political strength of parties.

Neither has there been any practical construction of any moment bearing on the interpretation of sec. 6.32 (1), Stats. The Progressive party is of relatively recent origin as a political party within the contemplation and scope of the statutes. Until the general election in 1936 there could have been no substantial problem of practical construction of sec. 6.32 (1), Stats., in the respect under consideration herein, because up to that time the political parties which would be dominant on any theory were represented by presidential candidates. The fact that the votes cast for the Progressive party's candidate for governor in 1936 constituted it "one of the two political parties which cast the largest vote in the district" within the meaning of that provision in sec. 6.32 (1), Stats., created a new state of affairs which probably had not been taken into consideration theretofore in either the enactment, or the application or construction of that statute. In that respect the innovation in the factual situation is similar to that which was involved in *State ex rel. Ekern v. Dammann,* 215 Wis. 394, 254 N. W. 759, in

which we held that the fact that ambiguities arose because of unforeseen conditions which rendered complete compliance with secs. 5.05 (6) and 5.17 (1), Stats., impossible in all respects did not defeat the right of a new party and its candidates to have a place upon the general ballot. No similar restraint in the meaning or letter of any provision of sec. 6.32 (1), Stats., is necessary, however, to render applicable to a new party,—or any party,—the alternative tests designated therein as the basis for the division of the election officials between "the party which cast the largest vote," and "the party receiving the next largest vote;" and thus bring all provisions as to that basis into complete harmony with the leading and dominant idea of the statute that those officials shall be recruited from "the two political parties which cast the largest vote . . . at the last preceding general election."

I am authorized to state that Mr. Justice WICKHEM concurs in this dissent.

A motion for a rehearing was denied, with $25 costs, on May 17, 1938.