WRIGHT, Respondent, vs. FORRESTAL and others, Appellants.

MARINER, Respondent, vs. FORRESTAL and others, Appellants.

*February 5 — February 23, 1886.*

MUNICIPAL CORPORATIONS: MILWAUKEE: STREET IMPROVEMENTS: ASSESSMENT OF BENEFITS. *(1) When determination of benefits conclusive. (2) Computation of time. (3) Separate votes on resolutions in council. (4) Practical construction of statutes. (5, 6) Impeaching assessment: Burden of proof. (7) Publication of notice: Official newspaper de facto. (8, 9) Designation of official paper: Construction of statutes: Presumptions. (10) Separate contracts for parts of work.*

1. The determination of the board of public works of Milwaukee that the improvement of a street is a benefit to any particular lot thereon, when confirmed by the common council, is final unless impeached for fraud.

2. Under a provision of the charter of Milwaukee requiring every resolution ordering work on the streets to lie over "at least four weeks after its introduction," a resolution introduced on Monday might properly be acted upon on the fourth Monday thereafter.

3. The charter provides that "the vote on the passage of every such resolution shall be taken by yeas and nays and duly entered in the journal," etc. *Held,* that a *separate* vote on each such resolution is not necessary.

4. The construction given to a statute by the body of men or officers who are directed to act upon it is entitled to weight, and should not be overriden by the courts unless it is contrary to the clearly expressed meaning of the law.

5. The burden of showing that an assessment of the benefits accruing to lots from street improvements was made arbitrarily and without reference to the actual benefits, is upon the party attacking the assessment.

6. After the time limited for the review and correction of such assessment has elapsed it cannot be impeached for mere mistakes of judgment.

7. Where the common council has undertaken, in pursuance of the charter, to designate a newspaper as the official paper for a year, and all notices, etc., of the city government are published in such paper during the year, that paper is *de facto* the official paper, even though the designation was irregularly made, and the publication of a notice therein will be held valid in collateral proceedings.

8. Under sec. 9, subch. 3, ch. 184, Laws of 1874, the common council of Milwaukee at its first meeting in each year designated, without advertising for bids, the official newspapers in which ordinances, notices, etc., should be published.  Sec. 1, ch. 297, Laws of 1877, provided that "at the last meeting of the said common council held prior to the expiration of the term of the [then] present board of aldermen," the council should direct the city clerk to advertise for bids by newspapers for publishing such ordinances, etc., and that on the first Tuesday of April in that year the bids should be opened in the presence of the mayor, and the clerk should enter the proposals upon the minutes and also an order awarding such printing.  Sec. 2 provided that in each year after 1877, " at such last meeting of said common council, and prior to the first meeting in each year, the said council, clerk, and mayor shall in like manner " designate the official newspapers and award the printing of the city.  The term of office of the aldermen expired on the third Tuesday of April in each year, and a meeting of the out-going council was always held on that day or the day before.  *Held,* that it was the intent of the act of 1877 that the direction to the clerk to advertise for bids should be given at the last meeting of the council held prior to the day on which the term of the aldermen expired, and that on that day (the *third,* not the *first,* Tuesday of April) the designation of the official papers and the award of the printing should be made

9. On April 8, 1878, the clerk was directed by the council to advertise for bids and to report to the council on the third Tuesday (April 16). He advertised, received the bids, made the proper entries in the minutes, designated the official papers, and reported to the council on the 16th as directed. The report was received and ordered on file. *Held*, that in the absence of other proof it would be presumed that the bids were opened in the presence of the mayor, and that the council approved of the designation made.

10. When the board of public works is unable to obtain satisfactory bids for the whole of a proposed improvement, it may let the contract for a part of the work at one time and another contract for the remainder at another time.

APPEALS from the County Court of *Milwaukee* County. The facts are stated in the opinion.

For the appellants there was a brief by *John A. Wall*, attorney, and *D. H. Johnson*, of counsel, and oral argument by *Mr. Johnson*. As to the computation of time they cited 4 Kent's Comm. (10th ed.), 95, note *b.; Vanderburgh v. Van Rensselaer*, 6 Paige, 147; *Rex v. Justices*, 4 Nev. & Man. 378; *Dougherty v. Porter*, 18 Kan. 206; *English v. Ozburn*, 59 Ga. 392; *Reed v. Sexton's Adm'rs*, 20 Kan. 200; *Meredith v. Chancey*, 59 Ind. 466; *Fry v. Bidwell*, 74 Ill. 381; *Stebbins v. Anthony*, 5 Col. 348; *Cressey v. Parks*, 75 Me. 387; *Catterlin v. Frankfort*, 87 Ind. 45; *Reigelsberger v. Stapp*, 91 id. 311; *Kerr v. Haverstick*, 94 id. 178; *White v. German Ins. Co.* 15 Neb. 660; *Chiles v. Smith's Heirs*, 13 B. Mon. 461; *Tucker v. White*, 19 Ind. 253; *Brown v. Buzan*, 24 id. 194; *Migotti v. Colville*, L. R. 4 C. P. Div. 223; *S. C.* 9 Cent. L. J. 105; *Pugh v. Duke of Leeds*, Cowp. 714; *Rex v. Stevens*, 5 East, 244; *Presbrey v. Williams*, 15 Mass. 193; *Lester v. Garland*, 15 Ves. Jr. 248.

For the respondents there was a brief by *E. Mariner* and *Frank M. Hoyt*, and oral argument by *Mr. Hoyt*. They contended, *inter alia*, that between the introduction of the resolution and the action of the council thereon, twenty-eight clear days must intervene, excluding the day of intro-

duction and the day of acting. *Early v. Doe,* 16 How. 610; *Sallee v. Ireland,* 9 Mich. 154; *Rex v. Herefordshire,* 3 Barn. & Ald. 581; *Zouch v. Empsey,* 4 id. 522; *Queen v. Shropshire,* 8 Ad. & El. 173; *Bemis v. Leonard,* 118 Mass. 502. The words "four weeks after its introduction," mean four weeks after *the day of its introduction. Seekonk v. Rehoboth,* 8 Cush. 371; *Bigelow v. Wilson,* 1 Pick. 494. By dividing the work and letting a part of it in 1878, the board of public works lost jurisdiction of the remainder, and could not enter into a new contract without a new resolution of the council. *Dougherty v. Hitchcock,* 35 Cal. 513; *Stockton v. Whittemore,* 50 id. 554; *Henderson v. Lambert,* 14 Bush (Ky.), 24; *Bonesteel v. New York,* 22 N. Y. 162.

Taylor, J. These actions were brought by the respondents to declare void and set aside certain tax certificates issued by the treasurer of the city of Milwaukee upon a tax sale made by said treasurer January 24, 1883, for the nonpayment of special assessments charged against the lots of the respective respondents, described in their respective complaints. The appellants *Forrestal, Willmanns,* and *Reynolds* are the owners of the improvement certificates of the board of public works of said city; and the tax certificates issued by the city treasurer are held by the city for the benefit of the owners of said improvement certificates.

The complaints set out the ownership of the lots described in the complaints, and the proceedings of the board of public works and common council of said city for the grading, etc., of a street in said city in front of said lots, by which proceedings the city attempted to charge said lots with a portion of the cost of grading, etc., said street; and that the lots were sold by the city treasurer to pay the several sums so charged against said lots. Several irregularities are charged to have intervened in said proceedings which it is claimed render the whole proceedings void and entitle

the plaintiffs to have said tax certificates declared void, as well as the improvement certificates held and owned by the other defendants.

The county court, after hearing the cases, granted the relief asked by the plaintiffs, and from the judgments entered in said actions in favor of the plaintiffs the defendants appealed to this court.

Upon the argument in this court by the learned counsel for the respondents it is contended that the proceedings of the city authorities are void for the following reasons: (1) Because the work of improvement, a part of the cost of which was charged to the lots of the respondents, was wholly for the public use, and no part of the cost can therefore be lawfully charged to the property of the respondents, except by way of general tax; (2) that the vote on the resolution of the common council directing the work to be done was void, because prematurely taken; (3) that the resolution was never passed as required by the city charter; (4) that the board of public works assessed the lots for benefits according to the cost of the work in front of the same, and not taking into account any real benefit to the lots assessed by making the improvements; (5) that the board of public works divided the work of the improvement, and let a part of the work in 1878 and the remainder of the work in 1882; (6) that no notice of assessment of benefits, or of the confirmation thereof, or to the owners to do the work, was given, or advertisement for bids made.

The first point is clearly untenable. The improvement for which the assessment of benefits was made in this case was for the grading, graveling, planking sidewalks, and paving the gutters of one of the public streets in said city. We suppose that such grading, graveling, paving, etc., of a street is always ordered for the public good, and not for the private advantage of the lot-owners adjoining the same. The question whether such grading and graveling is a ben-

efit to any particular lot or lots on said street is a question for the board of public works to determine in the first place, under the charter; and when their decision in that respect is confirmed, as prescribed by the city charter, such decision is final and conclusive, unless impeached by showing fraud on the part of said board. There is no evidence on which to sustain the charge of fraud against the board of public works in either of these cases. Whether or not the respondents' lots were in fact benefited by the grading of the street in question was a question of fact which must rest upon the opinion of witnesses. The county court made no finding upon the question of fraud, and it does not appear that any such finding was requested by the respondents, and no such charge of fraud was made against the board of public works in the complaints.

The learned county judge held that the resolution ordering the work did not lie over four weeks after its introduction before its passage, as required by the charter, and that it was not passed by a vote taken by the ayes and noes, as required by the charter. These findings are based upon the following provisions of the city charter: Sec. 30, ch. 144, Laws of 1875, being amendments to the city charter of Milwaukee, reads as follows: "Or unless, in the absence of such petition, the resolution of the common council ordering such works shall receive the votes of three fourths of the aldermen elected, and a majority of the aldermen of the ward in which such work is proposed to be done, and said resolution shall declare why it is necessary for the public interest to order such work. Every resolution ordering work without a petition therefor shall lie over at least four weeks after its introduction, and no action shall be taken by the common council if within that time a remonstrance against such proposed improvement shall be presented to the common council, signed by the residents of the city owning a majority of the feet front of all the lots fronting

upon such proposed improvement owned by the residents of such city.    The vote on the passage of every such resolution shall be taken by ayes and noes, and duly entered in the journal of proceedings."

The proof shows that the resolution was presented at a meeting of the common council held on the 21st of January, 1878, and that it was adopted by the council at a meeting held on the 18th of February next thereafter.    It also appears that the resolution was voted upon by the council at the same time that several other resolutions and propositions were voted upon.    The entry made by the clerk upon the votes taken was as follows:

" Alderman Ludwig, from the local committee of the First ward, reported to adopt the resolution referred, namely: 'A resolution that it is necessary to cause North Water street, from Brady street to Racine street, to be graded and graveled, the sidewalks planked, and the gutters paved, and that the board of public works have the same done.' Adopted by vote hereinafter recorded on folio 875."

The vote as recorded shows that it was taken by ayes and noes, and that all the aldermen present, twenty-nine in all, voted in favor of the resolution reported.    The resolution itself was sufficient in form and substance, and no objection is made to it.    The twenty-nine votes were more than three fourths of the aldermen elected, and also a majority of the aldermen of the ward.    The clerk in his testimony states the way in which these votes were taken.    He says: "The vote was not taken on that resolution alone.  . The vote was put in this way: The committees report all the matters referred to them, and when no objection is made they are laid aside, and when the order of business is through with they are taken up, and if no objections are made, and no separate vote demanded, they are all adopted in one vote."    The record of the clerk contains the following entry before recording the votes upon these resolutions: " As no separate

vote was demanded, and no objection being made, the reso-
lutions hereinbefore mentioned, and favorably reported
upon, were all adopted by the following votes." The vote
is then given in full. The evidence also shows that no re-
monstrance of any kind was ever presented to the common
council against the improvement of said street.

The learned counsel upon both sides have very carefully
and fully discussed the question as to the rules which should
govern in the computation of time under various provisions
of law, and have cited many cases bearing upon the ques-
tion from the English courts, and from the courts of this
country. It will be seen by an examination of the briefs
of the learned counsel that there is considerable diversity
of opinion upon the subject, and that different courts have
come to different conclusions upon similar statutes. We do
not consider it profitable to review those decisions in the
determination of this case. The statutory provision in this
case is an unusual one, and very few, if any, of the decisions
will be found applicable to the language used in the statute
above quoted. The language is: "The resolution shall lie
over at least four weeks after its introduction, and no action
shall be taken by the common council if within that time a
remonstrance," etc., "shall be presented to the common
council." The question was presented to the council when
the four weeks expired so that they might act on the same.
They evidently construed it, as men ordinarily would, that
a week was the period of time extending from Monday of
one week to Monday of the next week following, and not
until Tuesday of such week, and that the resolution, if in-
troduced on Monday, had laid over four weeks when the
fourth Monday thereafter had arrived, and that they were
at liberty to act upon it then. This we think is the rational
construction of the act, and clearly within the intention of
the legislature.

The construction given to a statute by the body of men

or officers who are directed to act upon it is always entitled to weight, and their construction should not be overridden by the courts, unless it be contrary to the clearly expressed meaning of the law. See *Scanlan v. Childs*, 33 Wis. 663; *Harrington v. Smith*, 28 Wis. 43. We think the resolution was not prematurely acted upon. The construction we have given to this statute is in accord with the decisions of the supreme court of Kansas in the cases of *Dougherty v. Porter*, 18 Kan. 206, and *Reed v. Sexton*, 20 Kan. 195–200.

Nor do we think the fact that the resolution was voted upon at the same time a vote was taken upon other resolutions vitiates the vote, and that therefore the resolution was never adopted by the council. All who have any knowledge of the proceedings of legislative bodies know that the practice adopted by the common council of the city of Milwaukee is a common practice in both branches of the legislature of this state, and of other states. To hold that this resolution was not adopted by the common council for the reason stated would invalidate a very considerable part of the acts of our legislature. The practice may not be one to be approved, but we are unable to say that it is not a lawful practice. The statute does not say that a separate vote shall be taken and recorded upon each resolution or act passed by the council, but that " the vote on the passage of every such resolution shall be taken by yeas and nays, and duly entered in the journal of proceedings." Here the vote was taken on the resolution in the proper way, and the yeas and nays were entered, etc., as required by law. We do not see that the change of language in the statute of 1875 from that used in the statute of 1874 has any significance as bearing upon this question. If it be desirable that a separate vote should be taken upon resolutions of this nature by the common council, it is very easy for the legislature to so expressly direct. It may also be remarked that in the complaints in these cases the fact that the resolution was

not passed by a separate vote of the common council, was not set up as a ground for avoiding the taxes on the part of the plaintiffs.

The county court also found as a fact " that the board of public works did not make any estimate or assessment of the benefits which, in their opinion, would actually accrue to the owner or owners of the several lots or parcels of land fronting on said improvement in consequence of the same;" and further finds that the assessment made by said board on the 11th of April, 1878, "was an arbitrary assessment, based solely on the cost of work in front of each lot, respectively, and without reference to or consideration of the actual benefits which would accrue to the owners of said lots and parcels of land, respectively, from such work."

After carefully reading the evidence in the case, we are of the opinion that these findings are unsupported by the evidence.   In a proceeding of this kind the burden of proof is on the plaintiff.   The presumption is that the officers proceeded regularly, and performed their duty, until the contrary is made to appear by competent evidence.   *Kœhler v. Dobberpuhl*, 56 Wis. 480, 486.

Certainly the parol evidence of the only witness who could have had any personal knowledge on the subject, viz., the member of the board who was sworn in the case, shows that the board, before making the awards of benefits, viewed the premises, and that they awarded the benefits, not on the basis of the work to be done in front of each lot, but upon the ground of benefits which would actually accrue to each lot from the improvement of the street as directed by the common council; and, so far as we can ascertain from the records introduced, there is nothing in them which contradicts this statement of the witness.   Certainly the record does show that quite a large number of the lots were not charged with benefits to an amount equal to the estimated cost of the work in front of the same, nor anything

near that sum.   Any mistakes which the board may have made in charging lots with a greater sum as benefits than it might be made to appear they would receive from the construction of the street, would furnish no ground of relief so long as such charge was not made fraudulently and for the purpose of making the owners pay more than their just proportion of the costs of such improvement.   Mistakes of judgment or opinion in this respect can only be corrected by appearing before the board at the proper time, and having them corrected by an appeal to the board or to the common council, as provided by the charter.   After the time for reviewing the assessment has passed, the legality or justice of the award of benefits can only be impeached by showing that the award was not made upon the proper basis, or that it was fraudulently made.   Mere mistake of judgment cannot avail to vitiate the proceedings.

The learned county judge also held that the notices required by law to be given had not in fact been given.   This finding is based, not on the fact that notices were not published in certain newspapers for the length of time required by the law, but upon the opinion of the learned judge that such notices were not published in such newspapers as the law directed them to be published in.

It is claimed that there were no official newspapers designated as required by law in 1878, in which legal notices in said city of Milwaukee could be published.   The proof shows that the common council undertook to designate two newspapers in said city as the official papers for the city in 1878, and that such papers acted as such official papers for the year, and that all notices and other proceedings of the city government were published in said papers during said year.   Even though the appointment was irregularly made, we think those papers were *de facto* if not *de jure* the official papers for the city, and that a publication in such papers

must be held valid in all collateral proceedings, whether the designation was regularly made or not. But we are of the opinion that the designation of these papers was legal, under sec. 2, ch. 297, Laws of 1877. There is some incongruity in the language used in sec. 1 of said chapter. The language of the section is as follows: " At the last meeting of said common council held prior to the expiration of the term of the present board of aldermen, the said common council shall direct the clerk," etc., to advertise for bids; and then, after directing what shall be done by the bidders in order to entitle the bids to be considered, the section directs that on the first Tuesday of April the clerk shall open the bids, etc., and award the contract. Now, it is well known that the last meeting of the council is after the first Tuesday of April. There is always a meeting on the day their term of office expires, or the day before, and the term does not expire until the third Tuesday of April. See sec. 4, subch. 2, ch. 184, Laws of 1874. The evident intent of the law was that at the last meeting of the common council for the year, previous to the meeting at which they would retire from office, the council should direct the clerk to advertise for bids from the English and German newspapers of the city to do the advertising and publishing for the city during the coming year. The mistake of the legislature was in supposing that the first Tuesday in April was the day on which the term of the board of aldermen expired in each year, and that on such day the last meeting would occur; and so directed that " on said first Tuesday of April the bids should be opened in the presence of the mayor, and that the clerk should thereupon, in the presence of the mayor, enter upon his minutes all the proposals, respectively, with the price for which each of said newspapers should offer to do the same, and thereupon the clerk should also enter upon the minutes an order awarding such

printing to one English newspaper and one German newspaper," etc. This is the direction for the appointment in 1877.

Then sec. 2 of said chapter says: "And each year after the year 1877, at such last meeting of said common council, and prior to the first meeting in each year, the said council, clerk, and mayor shall in like manner designate one newspaper in English and one in German, published," etc., "and award the printing to the lowest bidder, as provided in this act." A proviso is added that the council may, in its discretion, reject all bids that shall be deemed by them exorbitant. In case of the rejection of all bids for such cause the council shall readvertise for other bids, etc.

Under sec. 9, subch. 3, ch. 184, Laws of 1874, the common council, at the first meeting in each year, had power to designate the official papers without advertising for bids. The law of 1877 was evidently intended to place the appointment of the official papers in the retiring council, and to give the advertising, etc., to the papers which would do it for the least money.

It will be seen that it is the clear intention of this sec. 2 that the advertising for bids shall be made before the expiration of the terms of the aldermen in April of each year, because it requires the designation of the papers to be made after advertising for bids, and prior to the first meeting of the new board of aldermen for the ensuing year. This gives some clue to the meaning of the language used in the first section. What was done in 1878 was this: At a meeting on the 8th of April the common council passed resolutions directing the clerk to advertise for bids as required by the statute, and required the clerk to report to the common council on the third Tuesday of April, being the 16th. The clerk made the advertisements, received the bids, made the proper entries in his minutes, and designated the two newspapers in which the notices were afterwards

printed as the newspapers to do the advertising and publishing for the coming year. He made his report to the common council of the bids made, and stating what papers had been designated by him as the successful bidders, on the 16th day of April, 1878. The report containing such designation was received by the common council and ordered on file. This, in the absence of any other proof, is evidence of the approval of the common council of the designation made. There being no proof to the contrary, we must presume that the bids were opened in the presence of the mayor, and entered in the minutes of the clerk; and it must also be presumed, in the absence of proof, that the proper bonds were given by the successful bidders and approved by the mayor, as required by law. The appointment so made was in conformity to the law, and clearly carried out its intent, although there may be some difficulty in saying that the appointment was made on the particular day specified in the act. But if we construe the first Tuesday in April as meaning, as it was evidently intended to mean, the day on which the terms of the aldermen expired, there is no difficulty in upholding the appointment as made in conformity to the act. See *McCabe v. Sumner*, 40 Wis. 386; *Nichols v. Halliday*, 27 Wis. 406; *Williams v. McDonal*, 3 Pin. 331.

The only other objection to the proceedings is that the work of the improvement was let by two separate contracts, one in 1878 and the other in 1882. The statute does not direct that every work of improvement ordered shall be let by one contract, nor does it fix any time within which the work shall be let. It authorizes the board of public works to reject all bids for the proposed work when the lowest bid for the same shall appear to the board to be unreasonably high, and in such case to relet the work anew. Secs. 9, 10, subch. 5, ch. 184, Laws of 1874. In the cases at bar it appears that the board advertised for bids for the whole

work in 1878, but could get no satisfactory bids. They then advertised for the work on a part of the street, and got bids which were acceptable for that part of the work. Some attempt was afterwards made to get bids for the rest of the work, but no satisfactory offers were made until in 1882, when the work was let and performed. There is no evidence in the case which tends even to show that the plaintiffs were in any way injured by this delay, nor by the fact that a part of the work was performed under a separate contract from the one in 1882. As this is an equitable action, any irregularity in the proceedings which does not prejudice the plaintiffs or affect the substantial justice of the tax, is not a sufficient ground for avoiding the assessment. Sec. 35, subch. 18, ch. 184, Laws of 1874.

Upon the evidence in these cases we see no sufficient reason for setting aside the tax sales or the improvement certificates.

*By the Court.*— The judgment of the county court in each case is reversed, and the causes are remanded with directions to that court to enter judgment dismissing the complaint of the plaintiff in each case.