STATE EX REL. CITY OF WEST ALLIS, Appellant, vs. DIERIN-GER, Village Clerk, and others, Respondents.

*February 5—March 5, 1957.*

212

For the appellant there were briefs by *George A. Schmus,* city attorney, and *Charles G. Panosian,* assistant city attorney, and oral argument by *Mr. Schmus.*

For the respondents village of West Milwaukee and Herman C. Dieringer, village clerk, there was a brief by *Allen J. Busby,* village attorney, and *Maxwell H. Herriott* of Milwaukee, special counsel, and oral argument by *Mr. Herriott.*

For the respondent town of Greenfield and George L. Luck, town clerk, there was a brief by *Joseph A. Barly* of Milwaukee, and by *Joseph A. Barly* and *Charles Thekan,*

both of Milwaukee, attorneys for the remainder of the defendants except the village clerk and the village of West Milwaukee, and oral argument by *Mr. Barly.*

STEINLE, J.    The principal question presented is whether the trial court correctly interpreted the term "territory affected" as it appears in sec. 40.06 (2), Stats. 1955.

The legislature has provided two methods for the organization, reorganization, or dissolution of school districts in this state.   Under sec. 40.03, Stats., authority is vested in the school committee to create, alter, consolidate, or dissolve school districts.   Under sec. 40.06, such power is invested in town boards or village boards of councils of cities of the second, third, or fourth class.   Joint City School District No. 1 referred to herein, was organized pursuant to sec. 40.03.   The boards of the village of West Milwaukee and the town of Greenfield sought to organize Joint School District No. 16 under provision of sec. 40.06.

Sec. 40.06, Stats., provides as follows:

"(1) *Power; limitations.*  Upon the filing of a petition by an elector with the municipal clerk or upon its own order, any town or village board or council of a city of the second, third, or fourth class may, by order, create, alter, consolidate, or dissolve school districts.  No territory shall be detached from a district unless by the same order it is attached to another district or districts.   No district shall be created having less than $150,000 of taxable property as shown by the last assessment roll.

"(2) *Joint actions of board.*  If the territory affected by a proposed order lies in more than one municipality, the municipal boards shall act jointly; the concurrence of a majority of each board is necessary to a valid order.  The meeting of the several municipal boards or councils shall be called by the clerk of the municipality with whom the petition is filed; he shall give at least five days' notice in writing of the time and place of meeting to each member of each board or council.

"(3) *Notice of proposed action.* Whenever a petition for such alteration, creation, consolidation, or dissolution is filed, or a resolution initiating such action is adopted, the municipal board or boards or council or councils shall within thirty days meet and by resolution or joint resolution set a date for hearing within ten days and give at least five days' notice, in writing, to the clerk of each district to be in any way affected thereby of the day, hour, and place it will meet to decide upon the proposed changes. Each district clerk shall immediately notify the other members of his board.

"(4) *Order.* An order creating a district shall number the district and mention the municipality in which it is situated. A certified copy of the order shall be promptly filed and recorded in the office of the clerk of each municipality in which school districts affected by the order are situated and one copy shall be mailed to the county superintendent and one to the state superintendent. Such order shall be presumptive evidence of the facts recited therein and of the validity of all proceedings preliminary thereto.

"(5) *Appeal.* (a) Any person aggrieved by an order of a municipal board or council may appeal to the state superintendent within thirty days following the recording of such order; if a board or council, when petitioned to do so, refuses or neglects to issue and record an order of alteration, dissolution, consolidation, or creation, any person aggrieved may appeal within ninety days following the filing of the petition.

"(b) After determining the appeal the state superintendent shall enter an order affirming, modifying, or reversing the order appealed from, or if the appeal is from the refusal of a municipal board or council to file orders of alteration, dissolution, creation, or consolidation when petitioned to do so, the state superintendent may, if he finds the municipal board or council erred in refusing to file such an order, make such order as he deems proper under the circumstances.

"(c) An appeal from an order of the state superintendent may be taken to the circuit court of any county in the affected territory within thirty days from the date of said order. A written notice of appeal stating the grounds upon which said appeal is based must also be served on the state superintendent within thirty days from the date of his order.

"(6) *Referendum.* If within thirty days after the recording of an order by a municipal board, city council, or state superintendent, 10 per cent of the electors in the proposed district or 500 electors, whichever is smaller, file a petition with the county clerk as provided in sec. 40.03 (6) (b), requesting a referendum election, such order shall not become effective until it has been approved by both a majority vote of the resident electors within all of the territory outside the city or village limits of any city or village involved in the proposed reorganized district, voting at such election, and by a majority vote of the electors residing within city or village limits of all cities and villages involved in the proposed reorganized district voting at such election. The electors residing in that portion of any municipality not included in the area proposed to be reorganized shall not vote in such referendum. The referendum shall be conducted and the costs allocated in the manner provided for referendums in sec. 40.03 (6) except as herein set forth."

The trial court determined that the term "territory affected" relates solely to that part of an existing school district which is directly affected by the reorganization of a school district, and that it does not refer to the entire school district. The court was of the opinion that the term "territory affected," is plain and unambiguous, and that it is not necessary to employ interpretation as contained in the attorney general's opinion for use in construing the statute. In reaching such conclusion the court pointed out that when the legislature decided to refer to an entire school district, it used the word "district," but that when it had in mind only part of an existing district, it used the word "territory." The court also referred to the referendum provided in sub. (6) of sec. 40.06, Stats., and indicated that in its opinion, had the legislature intended "territory affected" to be synonymous with "school district affected," it would not have limited the right to vote solely within the area directly affected by the reorganization of a school district.

The court also found that after Joint City School District No. 1 was fully organized on January 5, 1956, it no longer pre-empted the field with reference to territory within its borders; that under sec. 40.06, Stats., the village of West Milwaukee and the town of Greenfield were privileged to detach territory from within the boundary of Joint City School District No. 1 for the creation of Joint School District No. 16; that notice was not required to be served upon the officers of the city of West Allis and the town of New Berlin with respect to the program to detach territory from Joint City School District No. 1; that the action of the municipal boards of the city of West Allis and the town of New Berlin was not required under sec. 40.06 for the detachment of territory from Joint City School District No. 1.

The city of West Allis does not contend that the provisions in sec. 40.06, Stats., for the formation of a school district by a town, village, or city of the second, third, or fourth class were repealed or suspended by the enactment of sec. 40.03. Nor does it contend that the question as to whether the boundaries of a school district should be changed is one of law or fact for judicial determination. It does not controvert the contention of the defendants that such matter is strictly for the legislature. It maintains that there is ambiguity with reference to the term "territory affected" as such appears in sec. 40.06 (2), and that hence an opinion of the attorney general, which appears in 21 Op. Atty. Gen. 837, 838, and was furnished to the state superintendent of public instruction on August 19, 1932, with reference to a construction of that term, and which has not been changed by the legislature in subsequent legislation relating to the subject, bears controlling weight. In part that opinion reads as follows:

"Subsec. (3), sec. 40.30 [now sec. 40.06, Stats.,] provides as follows:

" 'When the territory to be affected by proposed order lies in more than one municipality, the municipal boards

shall act jointly, and the concurrence of a majority of each board shall be necessary to a valid order.'

"The territory to be affected by the proposed order includes not only the area actually detached from one school district and attached to the other, but also the area contained in both school districts. The territory of the school district in town 'A' is affected by the detachment of the territory and the consequent necessity of adjusting the assets and liabilities with the district to which the detached territory is attached by the order. The joint school district located in part in town 'B,' and to which the detached area is to be attached, is affected in a similar manner. The adjustment between school districts caused by such an alteration of their boundaries has a direct effect upon the taxation and liabilities of the entire territory of each district.

"It is the opinion of this department that under the facts stated the order of town 'A' is invalid unless concurred in by each municipal board of the various municipalities in which the joint school district now lies."

Long-continued administrative interpretation and construction is not controlling where the language of the statute is so clear as not to need or to be susceptible of construction. *State ex rel. Time Ins. Co. v. Smith* (1924), 184 Wis. 455, 200 N. W. 65. See also *Travelers' Ins. Co. v. Fricke* (1896), 94 Wis. 258, 266, 68 N. W. 958. But, where the language of the statute is not clear, and an ambiguity exists, and practical construction has obtained for many years, then it is entitled to controlling weight. *State ex rel. Bashford v. Frear* (1909), 138 Wis. 536, 120 N. W. 216. See also *Wright v. Forrestal* (1886), 65 Wis. 341, 27 N. W. 52.

A statute, or any sentence, clause, or word thereof, is "ambiguous" when it is capable of being understood by reasonably well-informed persons in either of two or more senses. *Thompson v. Akin* (1898), 81 Ill. App. 62. The word "ambiguous" has also been held to mean "doubtful and uncertain" and "open to construction." 3 Words and Phrases (perm. ed.), p. 440.

In *Harrington v. Smith* (1871), 28 Wis. 43, 69, this court stated in part:

"And in this case the important fact is not to be overlooked, that the highest law officer of the state—the attorney general—has always been one of the commissioners, whose duty it was to construe and carry the law into effect. Great weight is undoubtedly to be attached to a construction which has thus been given. During the time this uniform construction and practice have prevailed, the office of attorney general has been filled by nine different individuals, all of them gentlemen of learning and accomplishment in their profession; and of the other commissioners, some have been lawyers, and four at least have since held the office of governor. The concurrent opinion and advice of these attorneys general and of the other commissioners, extending through a period of so many years, ought, it would seem, to be some evidence of what the law is; and some persons might be disposed, perhaps, to think, evidence equal to a decision of this court. The supreme court of the United States has on more than one occasion paid great respect to such evidence on questions of statutory construction. . . . [Cases cited.] In the former case the court says, speaking of the practical construction of an act of the legislature of the state of New York by the public officers of that state, including the attorney general, that it is deserving of consideration, and although it cannot be admitted as controlling, it is not to be overlooked, *and perhaps should be regarded as decisive in a case of doubt or where the error is not plain.*" (Emphasis supplied.)

See also *State ex rel. Taylor v. McKinny* (1911), 146 Wis. 673, 132 N. W. 600, and *Milwaukee County v. State Dept. of Public Welfare* (1955), 271 Wis. 219, 223, 72 N. W. (2d) 727.

In 2 Sutherland, Statutory Construction (3d ed.), pp. 516, 517, sec. 5105, the author points out that: ". . . interpretations by the attorney general and the legal department of a state will have important bearing upon statutory meaning, since the attorney general and his office are required by

law to issue opinions for the assistance of the various departments of the government administering the law." In the same work, pp. 520, 521, sec. 5107, it is said that, "Like all precedents, where contemporaneous and practical interpretation had stood unchallenged for a considerable length of time it will be regarded as of great importance in arriving at the proper construction of a statute. . . . One of the soundest reasons sustaining contemporaneous interpretations of long standing is the fact that reliance has been placed thereon by the public and those having an interest in the interpretation of the law." In sec. 5109 of the same work, pp. 523, 524, it is said, "Where a statute has received a contemporaneous and practical interpretation and the statute as interpreted is re-enacted, the practical interpretation is accorded greater weight than it ordinarily receives, and is regarded as presumptively the correct interpretation of the law. The rule here is based upon the theory that the legislature is acquainted with the contemporaneous interpretation of a statute, especially when made by an administrative body or executive officers charged with the duty of administering or enforcing the law, and therefore impliedly adopts the interpretation upon re-enactment."

In *State ex rel. Koch v. Retirement Board* (1944), 244 Wis. 580, 586, 13 N. W. (2d) 56, 14 N. W. (2d) 177, this court stated:

"As we said in *State ex rel. Green v. Clark,* 235 Wis. 628, 630, 294 N. W. 25,—

" '. . . the practical construction, long continued, given to a statute by those intrusted with its administration is "of great weight and is oftentimes decisive" in determining its meaning. *State v. Johnson,* 186 Wis. 59, 69, 202 N. W. 319.' "

Sub. (4) of sec. 14.53, Stats., provides that the attorney general shall "give his opinion in writing, when required, without fee, upon all questions of law submitted to him by

the legislature or either branch thereof, or by the head of any department of the state government."

The state superintendent of public instruction is the head of the department that administers school matters in this state. Sub. (6) of sec. 39.02, Stats., provides that the state superintendent shall "by reports, bulletins, circulars, correspondence, and public addresses give the public information upon the different methods of school organization and management and the subject of education generally."

We are not able to conclude as did the trial court that the meaning of the words "territory affected" is clear and unambiguous. That doubt and uncertainty exists with respect thereto is apparent from the positions taken by the respective parties in their interpretations of the term. We cannot agree with the defendants that it appears certain from their analysis of sec. 40.06, Stats., and specifically from their stated observations as to the terms "territory detached," "territory affected," and "district to be affected" as used in the statute, that the term "territory affected" may reasonably be construed only to mean the territory which is to be detached from an existing school district, and which will be in the school district as it exists after an order has been made creating it. Further, the conflict of opinion as to the meaning of the term "territory affected" as indicated in the stipulated facts relating to the city attorney of Glendale's declination to follow the opinion of the attorney general shows too that the language in question is not plain.

In effect the defendants argue that in a situation as here the term "territory affected" means only the territory detached, and does not include school districts from which it is detached. The fact that Joint City School District No. 1 was established under provision of sec. 40.03, Stats., would not prevent a later detachment of part of its territory under sec. 40.06. See *School Dist. v. Callahan* (1941), 237 Wis. 560, 575, 297 N. W. 407; 39 Op. Atty. Gen. 302, 303.

However, exact compliance with sec. 40.06, would be required in order to effectuate valid alteration in such regard. It is not reasonable to assume that the legislature intended, when considering the interest of good order and efficient school administration in this state, that an existing school district may be compelled to yield to the severance of part of its territory without the vote of the councils or boards of the governmental units in which such school district is located, with reference to such alteration. In a comparable situation, although sec. 40.13 was referred to, we recently said in *Brown Deer v. Milwaukee* (1956), 274 Wis. 50, 70, 71, 79 N. W. (2d) 340:

"On general principles we should hesitate, in the absence of clear legislative command, to hold that one constituent municipality may destroy a joint union high-school district by unilateral action, and thereby perhaps leave the remainder of the district with a crippled school, an inadequate tax base, and a heavy burden of debt. . . .

"Other statutes authorizing alteration of school districts lying in more than one municipality contain safeguards such as notice, hearing, action by the county school committee or by each municipal board, right of appeal, and referendum. See secs. 40.03, 40.06, Stats."

Manifestly, were it to be held that "territory affected" refers only to the territory detached and does not include the remaining portion of the school district from which the territory was detached, the harmful and burdensome results referred to in *Brown Deer v. Milwaukee, supra,* could easily obtain.

It is also to be observed that a city school district is not a separate governmental unit. It is an arm of the city government. The common council votes the taxes for the school district. Members of the school district are officers of the city. See *Huettner v. Eau Claire* (1943), 243 Wis. 80, 9 N. W. (2d) 583. Sec. 40.807 (3), Stats., provides

that with reference to a city school district, the city council or commission acting with the town chairmen and village presidents of towns and villages in the district, shall have the power to approve the school budget, levy the general property tax for school purposes, and shall have all power with respect to other fiscal controls. Such procedure obtains while the district remains a city school district and unless such officers vote to have the district become a common school district.

In further support of their position that the legislature did not intend that the term "territory affected" shall mean the same as "school district affected," the defendants point to the provisions in sub. (6) of sec. 40.06, Stats. (enacted in 1951), which require a referendum in which only electors residing in the area proposed to be reorganized, shall be eligible to vote. Actually the statute provides that, "The electors residing in that portion of any municipality not included in the area proposed to be reorganized shall not vote in such referendum." From this language the defendants apparently seek to imply that all considerations affecting the detached area rest entirely with the municipalities and the residents of such area.

On the other hand, plaintiff contends that while the legislature in its discretion could have provided for reorganization without any referendum, apparently it felt that even after jurisdiction had been secured, and all legal conditions precedent had been met by the municipal boards (including concurrence of all boards with "territory affected"), the order of such boards is to be subject to a legal condition subsequent, to wit, a ratification by the electors within the proposed new district. The plaintiff also submits that the legislature knew that the words "territory affected" had been consistently interpreted and construed to include the parent territory as well as the detached territory, and that if the legislature merely provided "the electors in the territory

affected shall vote in the referendum," the vote would be taken beyond the boundaries of the proposed new district; and that the legislature did not want the vote so extended and hence carefully spelled out the area within which the vote should be held so as to lift it out of the "territory affected" in sub. (2) of sec. 40.06, Stats.

We agree with the plaintiff's views in this regard. It is not inconceivable that were all of the municipal boards in a school district from which territory was proposed to be detached, inclined to favor such detachment, and would actually vote for it, the majority of the residents of the detached area might by referendum still vote against detachment. Under such circumstances, the detachment could not validly be effectuated. On the other hand, if the majority of such residents desired to take over the responsibility of the proposed detached area, they could by their vote in the referendum legally complete the processing of the detachment.

Considerations other than those herein set forth were also presented in the arguments of the parties. However, our study of the same reveals that none of such would be controlling with respect to an interpretation of the language of the statute in question.

In view of the observations herein made, we are compelled to determine that the term "territory affected" in sub. (2) of sec. 40.06, Stats., is ambiguous, and that therefore the administrative and practical interpretation of said language as acquiesced in by the legislature for nineteen years, during which time it made numerous amendments to sec. 40.06 must be applied to the cause. We conclude that the terminology "territory affected by a proposed order" as such appears in sec. 40.06 (2), refers not only to the area actually detached from one school district and attached to another, but includes also the area contained in both school districts. In the instant

matter, territory could not validly be withdrawn from Joint City School District No. 1 except by the concurring action of the four municipalities having territory therein. The action of the village board of the village of West Milwaukee and the town board of the town of Greenfield in creating Joint School District No. 16 was null and void for the reason of the nonparticipation and nonconcurrence by the common council of the city of West Allis and the town board of New Berlin with respect to such action.

*By the Court.*—Judgment reversed, with directions to enter judgment in plaintiff's favor and in accordance with this opinion.